See also, D.C., 383 F.Supp. 491.

George **SQUILLACOTE**, Regional Director of the Thirtieth Region of the National Labor Relations Board For and on Behalf of the **NATIONAL LABOR RELATIONS BOARD**, Petitioner,

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AND ITS LOCAL 578, UAW**, Respondent.

Civ. A. No. 74–C–457.

United States District Court, E. D. Wisconsin.

Nov. 21, 1974.

**1172**

Philip E. Bloedorn, Mark Burstein, and Stephen G. Katz, NLRB, Milwaukee, Wis., for petitioner.

George F. Graf and Herbert S. Bratt, Milwaukee, Wis., for respondent.

## DECISION AND ORDER

REYNOLDS, District Judge.

The Regional Director for the Thirtieth Region of the National Labor Relations Board (hereinafter "Board") has petitioned this court for a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(j), pending the determination by the Board of a complaint alleging unfair labor practices by the respondent union and its Local 578.

The petition was filed after the issuance of a complaint pursuant to Section 10(b) of the Act and is predicated upon the Board's conclusion that there is reasonable cause to believe that the respondent union has engaged in and is engaging in conduct violative of Section 8(a)(1) of the Act. Specifically, the Board contends that the union has unlawfully engaged in acts of violence and other strike misconduct and thereby has interfered with, restrained, and coerced nonstriking employees in the exercise of the rights guaranteed them in Section 7 of the Act. The Board requests that this court enjoin the union from further engaging in the strike misconduct pending the Board's resolution of the unfair labor practices.

The Board has accompanied its petition with over 200 affidavits in support of its allegations of strike misconduct. The matter was argued by counsel on October 31, 1974. Having care-

fully considered the Board's extensive evidentiary submission and the complete background and circumstances of the labor dispute which gave rise to the petition, this court concludes that, even assuming for purposes of this motion that the Board has demonstrated reasonable cause to believe that respondent union has engaged in unfair labor practices, the issuance of an injunction under the circumstances presented by this case would be neither just, proper, nor consonant with the policies of the National Labor Relations Act.

## I. FACTS

Respondent union is and has been the bargaining representative of certain employees of the Oshkosh Truck Corporation (hereinafter "Oshkosh") since approximately 1937. The current labor dispute between the union and the employer, Oshkosh, commenced after the most recent contract between the parties expired on May 31, 1974. On the following day the union went out on strike. On June 28, 1974, the employer filed a charge with the Board alleging that respondent union was engaging in unfair labor practices within the meaning of Section 8(a)(1) of the Act. On July 11, 1974, the union filed charges with the Board against the employer alleging that it was engaging in unfair labor practices within the meaning of Sections 8(a)(1), 8(a)(3), and 8(a)(5) of the Act. On September 9, 1974, the Board issued complaints upon the charges of both the employer and the union. The complaint issued against the union forms the basis of the Board's instant petition and this proceeding before the court.

In the complaint issued against the employer, the Board alleges that Oshkosh has since June 1, 1974, negotiated with a firm and fixed intention to avoid reaching an agreement on a collective bargaining agreement and/or to force the union to accept an agreement which would eventually cause the union to lose its status as collective bargaining representative of the employees. The complaint further alleges that the strike was caused by the unfair labor practices of the company and that the strike is an unfair labor practice strike. In addition, the Board alleges that certain agents of the employer have interfered with, restrained, and coerced striking employees in the exercise of their rights guaranteed by Section 7 of the Act. Specifically, the Board has charged that agents of the employer have on various occasions threatened striking employees with bodily harm. Finally, the Board charges that Oshkosh discriminatorily discharged an employee because of his membership in and activities on behalf of the union, which discharge was subsequently rescinded on August 24, 1974.

The cases against both the employer and union were consolidated for hearing before the Board. The hearing was to commence on October 1, 1974, but was continued until October 15, 1974, at the request of a federal mediator.

The petition for injunction was not served upon the union until October 9, 1974. On the same day one of the two attorneys representing the employer before the Board withdrew and was replaced by other counsel. On October 9, 1974, the company, aware of the injunctive proceedings pending in this court, requested a postponement of the hearing before the administrative law judge. On the request and insistence of the company, over the objection of the union, the entire proceeding before the Board was postponed until October 30, 1974. While the Board has petitioned this court for injunctive relief against the alleged acts of the union, no such injunctive relief has been requested against the alleged acts of the employer. It is within this background that the court must consider the Board's petition for injunctive relief against the union.

## II. Section 10(j)

The authorization for this court to grant the injunctive relief sought by the Board is found in Section 10(j) of the National Labor Relations Act:

"The Board shall have power, upon issuance of a complaint as provided in

subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and *thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.*" (Emphasis added.)

■ Under this statute, in order to secure an injunction the Board must show, and the court must find first, that there is reasonable cause to believe that the alleged unfair labor practices have been committed, and second, that the relief prayed for is just and proper under the facts and circumstances of the particular case. Boire v. International Brotherhood of Teamsters, etc., 479 F.2d 778 (5th Cir. 1973); McLeod v. General Electric Co., 2 Cir., 366 F.2d 847; Johnston v. J. A. Hackney & Sons, Inc., 300 F.Supp. 375 (E.D.N.C.1969). Even assuming that the Board has established reasonable cause to believe that respondent union has violated Section 8(a)(1) of the Act, issuance of an injunction would not be "proper and just" in this particular case for the reasons stated below.

### III. PROPRIETY OF INJUNCTIVE RELIEF

■■ The dispositive issue presented by the Board's petition is whether the injunctive relief is "proper and just" under the facts and circumstances presented to the court. An injunction should be issued only in extraordinary circumstances or when a drastic remedy is necessary. McLeod v. General Electric Co., 366 F.2d 847 (2d Cir. 1966); Minnesota Mining & Mfg. Co. v. Meter, 385 F.2d 265 (8th Cir. 1967); Angle v. Sacks, 382 F.2d 655 (10th Cir. 1967).

This is particularly true in the field of labor law where Congress by the Norris-LaGuardia Act deprived the federal courts of jurisdiction to issue injunctions in labor disputes. McLeod v. General Electric Co., supra. While Section 10(j) carves out an exception to the blanket prohibition of Norris-LaGuardia, Section 10(j) must be construed in light of the congressional recognition of the dangers inherent in conducting labor relations by way of injunction.

■ In enacting Section 10(j), Congress recognized that the Board's adjudication of unfair labor practice charges may be very time consuming. Thus, Congress felt that under proper circumstances injunctive relief would be required to preserve the status quo pending the final adjudication of the Board and thereby protect the efficacy of the Board's final order. Consequently, the purpose of a 10(j) injunction is to preserve the status quo while the parties are awaiting the resolution of their basic dispute by the Board. If the 10(j) injunction will not preserve the status quo pending the Board's resolution of the charges before it, the injunction will not accomplish the purposes of 10(j) and is not proper.

■■ Section 10(j) was not intended to change the basic procedure under the National Labor Relations Act which creates a system in which the Board, as an expert in the area, would in the first instance consider and decide the issues before it, subject to later review of the court of appeals. Thus, where the Board seeks to alter the normal procedure under the Act, it must demonstrate to the court that the impact on the "public interest" is grave enough to justify the swifter corrective action authorized by 10(j) than is available under normal Board adjudication and court enforcement.

#### A. *Preservation of the Status Quo*

The labor dispute between respondent union and Oshkosh is presently over five months old. The Board has charged both parties with serious unfair labor prac-

tices. The Board's charges against the employer are of a kind which ordinarily have the effect of prolonging a labor dispute. And yet the Board seeks an injunction against the practices of only the union, although the Board has alleged that both parties to the dispute are wrongdoers. Under these circumstances the issuance of an injunction against the union, rather than preserving the status quo, would have an effect of upsetting and disrupting the status quo. For this court to intervene on one side of a long extended and bitter labor dispute may be enough to tip the balance in favor of the employer.

In a company advertisement (Exhibit B of respondent's answer) which appeared in a local newspaper on the same day that the employer was successful in postponing the Board's hearing on its unfair labor practices, the employer clearly demonstrates its design and intention to use these 10(j) proceedings in a federal court as a tool to solicit strike breakers. Also, in a letter to its employees on October 15, 1974 (Exhibit C of respondent's answer), the company again sought to use these injunctive proceedings to break down the morale of the strikers. From the tenor of the company advertisement and letter to employees, it is obvious that the employer believes and hopes that this court's intervention in this labor dispute will effectively upset the status quo.

If the Board wants to maintain the status quo, then it can seek an injunction against both parties. However, the Board did not choose to do so although it claims both parties are wrongdoers. Consequently, the requested injunction would not preserve the status quo and is not proper.

B. *Public Interest*

Another ground that justifies resorting to injunctive relief by the Board is that the impact on the "public interest" is grave enough to require that the normal Board procedures be abandoned. The Board has not demonstrated to this court that other forums and law enforcement agencies available to stop the alleged acts of destruction and strike misconduct are unable to do so in this case. The Board has failed to demonstrate why the "public interest" is not adequately protected by the Board's normal adjudicative procedures and local and state law enforcement agencies. The Board's statement in oral argument that local officials will not enforce the law, with no supporting evidence, is not sufficient justification for a federal court injunction.

The public interest is served by the peaceful resolution of labor disputes while at the same time protecting the rights of both employers and employees. This court is convinced that issuance of an injunction against only one party in this case will not lead to a quicker or more peaceful and equitable resolution of this labor dispute. Consequently, the extraordinary and drastic remedy of injunction is not warranted by the public interest in this case.

Finally, the alleged union activity complained of has continued since early June, and the Board did not seek this injunctive relief until after the Board's own hearing was postponed. The great majority of the acts complained of occurred before September. The Board did not seek injunctive relief until October 9, 1974, after it had postponed its own hearings. It is hard to believe that the "public interest" presently demands injunctive relief and did not in July and August when the majority of the union's violations are alleged to have occurred. The Board cannot delay its normal procedures and then come to this court alleging that the extraordinary remedy of injunction is necessary to protect the public interest.

For the foregoing reasons, the Court finds that issuance of an injunction in this action would be neither just, proper, nor consonant with the policies of the National Labor Relations Act.

Now, therefore, it is ordered that the petition of the Board is denied.

It is further ordered that respondent's motion to dismiss the petition of the National Labor Relations Board be and hereby is granted without costs to either party.