583 F.2d 100
 99 L.R.R.M. (BNA) 2543, 84 Lab.Cas. P 10,790
 Arthur EISENBERG, Regional Director of the Twenty-second
Region of the National Labor Relations Board, for
and on Behalf of the NATIONAL LABOR
RELATIONS BOARD, Appellant in
No. 77-2058,
v.
HOLLAND RANTOS CO., INC., Central Jersey Industrial Park,
Inc., Edmar Corporation and Chandler Realty Company, Inc.
Appeal of HOLLAND RANTOS CO., INC., in No. 77-2059.
Appeal of CENTRAL JERSEY INDUSTRIAL PARK, INC., Edmar
Corporation, and Chandler Realty Company, Inc., in
No. 78-1018.
HOLLAND RANTOS COMPANY, INC., a division of Youngs Drug
Products Corporation and Central Jersey Industrial Park,
Inc., Edmar Company, Incorporated and Edward Chandler Realty
Company, Inc., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 77-2058, 77-2059, 78-1018 and 78-1187.
 United States Court of Appeals,
Third Circuit.
 Argued June 7, 1978.
Decided Aug. 23, 1978.
 
 Joseph E. Mayer, Asst. Gen. Counsel, Milford R. Limesand, Deputy Asst. Gen. Counsel, Harold J. Datz, Associate Gen. Counsel, James C. Holcomb, Atty., N. L. R. B., Washington, D.C., for appellant in No. 77-2058 and as cross-appellee in Nos. 77-2059 and 78-1018.
 Roger S. Kaplan, New York City, for petitioners in No. 78-1187 and appellees in No. 77-2058 and as cross-appellants in Nos. 77-2059 and 78-1018.
 Jackson, Lewis, Schnitzler & Krupman, New York City, for petitioners and appellee in No. 77-2058 and cross-appellant in No. 77-2059.
 Collis Suzanne Stocking, N. L. R. B., Washington, D.C., for respondent in No. 78-1187 and respondent.
 John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, N. L. R. B., Washington, D.C., for appellant in No. 77-2058 and cross-appellee in Nos. 77-2059 and 78-1018 and respondent.
 Robert A. White, Smith, Stratton, Wise & Heher, Princeton, N. J., for appellee in No. 77-2058 and cross-appellant in No. 77-2059 and petitioners.
 Harold R. Weinrich, New York City, for appellee in No. 77-2058 and cross-appellant in No. 77-2059.
 Charles S. Gaines, Newark, N. J., for appellant in No. 78-1018 and petitioners.
 Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Howard E. Perlstein, N. L. R. B., Washington, D.C., for respondent.
 Before ADAMS, VAN DUSEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 These appeals originate from unfair labor practice charges filed with the National Labor Relations Board on April 18, 1977, by Local No. 773, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO (hereafter Union). The Union's charges alleged that Holland Rantos Co., Inc. (Holland Rantos) was engaged in unfair labor practices in violation of § 8(a)(1) of the National Labor Relations Act, As amended, 29 U.S.C. § 158(a)(1) (1976),[1] by denying its employees access to Holland Rantos' manufacturing facility which was leased from a privately owned industrial park, Central Jersey Industrial Park, Inc. (Central Jersey).[2] The Union's complaint, as subsequently amended during proceedings before the Board, named Central Jersey and its two owners, Edmar Corporation and Chandler Realty Company, Inc., as a single-employer respondent in addition to Holland Rantos.[3] After an investigation, the Regional Director of the NLRB, Arthur Eisenberg, issued a consolidated complaint against all respondents on May 3, 1977. A hearing was conducted before a hearing examiner on June 1, 1977. On June 23, 1977, the Regional Director, on behalf of the Board, filed with the United States District Court for the District of New Jersey a petition for a temporary injunction pursuant to § 10(j) of the National Labor Relations Act, As amended, 29 U.S.C. § 160(j) (1976). At a hearing before the district court, the parties stipulated that the transcript and exhibits of the proceedings before the hearing examiner constituted the appropriate record for the 10(j) proceedings. On July 18, 1977, the district court issued a memorandum of findings and conclusions of law determining that there was reasonable cause to believe that Holland Rantos and Central Jersey were violating § 8(a)(1). The district court granted a temporary injunction but, over the Board's express objections, limited the injunction's duration to 90 days from July 20, 1977, citing Eisenberg v. Hartz Mountain Corp., 519 F.2d 138 (3d Cir. 1975).[4] Holland Rantos and Central Jersey have appealed from the district court's grant of a temporary injunction at Nos. 77-2059 and 78-1018. The Regional Director, on behalf of the Board, has appealed from the limitation of the injunction to 90 days at No. 77-2058.
 
 
 2
 The hearing examiner issued his decision on September 16, 1977, finding a violation by each respondent of § 8(a)(1). The Board thereafter moved for an extension of the district court's § 10(j) injunction. Following a hearing on that motion on October 7, 1977, the district court extended the injunction until January 16, 1978. On expiration of this first extension, the district court granted a second extension until March 17, 1978. By decision and order of February 6, 1978, the Board affirmed the hearing examiner's ". . . rulings, findings, and conclusions . . ." (SA 8) that Holland Rantos and Central Jersey had committed an unfair labor practice in violation of 29 U.S.C. § 158(a)(1) (1976).[5] Holland Rantos and Central Jersey have petitioned this court for review of the Board's February 6, 1978, order at No. 78-1187.[6] The Board filed a cross-petition for enforcement of the February 6, 1978, order on March 28, 1978. We affirm the action of the district court in issuing and extending the temporary injunction and deny the Petition for Review of the Board's February 6, 1978 order, which will be enforced.
 
 
 3
 I. THE TEMPORARY INJUNCTION ISSUED UNDER § 10(j)[7]
 
 
 4
 The Board has power under § 10(j) to petition the district court "for appropriate temporary relief or restraining order" and the district court has jurisdiction to grant "such temporary relief or restraining order as it deems just and proper" in the sense of being in the public interest. See Eisenberg v. Hartz Mountain Corp., 519 F.2d 138, 142 (3d Cir. 1975). After a careful review of the record and consideration of the briefs, as well as oral arguments, we can find no abuse of discretion by the district court in granting the § 10(j) injunctions described above on this record.
 
 
 5
 We reject the contention of the Regional Director, on behalf of the Board, that the district court committed reversible error or abused its discretion (see pp. 11-12 of Brief for Appellant at No. 77-2058 Cross-Appellee at Nos. 77-2059 and 78-1018) in limiting the duration of the temporary injunctive relief in accordance with the principles adopted by this court in Hartz Mountain, supra at 144, where the court said:
 
 
 6
 "In our view, a six-month period from the date of issuance of a Section 10(j) injunction should suffice, save in the most extraordinary circumstances, for the completion of expedited action by an administrative law judge on the underlying complaint. Accordingly, we hold that in this circuit such an injunction should include an explicit time limitation, not longer than six months, on the restraint it imposes. If it is believed that injunctive relief or its continuation is warranted after the findings and recommendations of the administrative law judge have been entered, upon proper petition in an appropriate case a district judge may grant or continue a Section 10(j) injunction for an additional period of not more than six months to permit Board action upon those recommendations. Moreover, these six-month limitations shall not preclude a district judge from extending the life of any Section 10(j) injunction for an additional thirty-day period upon a showing that administrative action on the underlying controversy seems to be imminent."
 
 
 7
 We note that Hartz Mountain, supra at note 5, p. 143, pointed out that ". . . in many Section 10(j) cases . . . , an evidentiary hearing may be essential to informed decision whether an injunction would be in the public interest." The grant and the extensions of the temporary 10(j) injunction were within the time limitations stated in Hartz Mountain, supra at 144, and the availability of a hearing at the time of each extension assured the parties of an opportunity to be heard and to present testimony concerning the need for the restraints imposed in light of the current factual situation. We conclude that there is no persuasive reason to modify the abovementioned Hartz Mountain principles on the record now before us.
 
 II. THE BOARD'S ORDER OF FEBRUARY 6, 1978
 
 8
 There is substantial evidence in the record as a whole to support the Board's findings, conclusions and order. See Hudgens v. N. L. R. B., 424 U.S. 507, 522, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); N. L. R. B. v. Babcock & Wilcox Company, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956); N. L. R. B. v. Visceglia, 498 F.2d 43, 47 (3d Cir. 1974).[8]
 
 
 9
 The § 10(j) temporary injunction orders of the district court will be affirmed, the petition for review will be denied, and the February 6, 1978, order of the Board will be enforced. Each party shall bear its own costs.
 
 
 
 [1]
 29 U.S.C. § 158(a)(1) provides:
 "It shall be an unfair labor practice for an employer
 "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7."
 Section 7 (29 U.S.C. § 157) provides in material part:
 "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities . . . ."
 
 
 [2]
 Holland Rantos' brief at Nos. 77-2058/9 and 78-1018 states at pages 5-6, 7-8 and 9-10:
 "Holland Rantos is engaged, Inter alia, in the manufacture, sale and distribution of pre-moistened towelettes and related products at its leased plant located in CJIP's industrial park. Holland Rantos is not a retailer; its facility is not open to the general public. Access to Holland Rantos' premises is limited to its employees, common carriers picking up and delivering goods and occasionally, vendors . . . . (5-6)
 "The entire industrial park is zoned for light industry . . . . There are no retail enterprises located anywhere in the park . . . .
 "In the Edmar section of the park there are fourteen facilities, including Holland Rantos. All persons seeking to reach any of the fourteen facilities must use Easy Street, for it is the only path of ingress and egress to and from the Edmar section . . . . (7-8)
 "At 12.01 a. m. on April 2, four employees began picketing in Easy Street in front of the Holland Rantos building . . . . The picketing continued for approximately two minutes, at which time a security guard employed by Holland Rantos, told the pickets that they could not picket in front of the building since it was private property. He asked the employees to move to the intersection of Easy Street and Chimney Rock Road . . . . They complied . . . .
 "The pickets drove to the end of Easy Street, where they parked their vehicles and resumed picketing in the diagonal parking areas on Chimney Rock Road . . . .
 "The employees continued to picket in these parking areas on the east side of the intersection of Chimney Rock Road and Easy Street from April 2 through April 7 on a three-shift, 24-hour basis."
 
 
 [3]
 We shall refer to the single-employer owner of the industrial park as Central Jersey
 
 
 [4]
 Holland Rantos' argument that picketing should not be permitted on its leased property in the Central Jersey Industrial Park was rejected and picketing was permitted in front of its building. The Board's objection to the 90-day limit on the injunction was denied
 
 
 [5]
 The hearing examiner's opinion at note 21 (SA 30) concluded:
 ". . . the newly hired uniformed guards directing the employees away from picketing in front of the Easy Street entrance constitutes the act of unlawful interference and is the fundamental violation of Section 7 rights. In any case, the directions to the pickets by newly-hired guards employed by Holland Rantos comes within the ambit of an implied threat to (sic) force if that conclusion were a necessary element for this Section 7 violation. It should be noted that the Falls City Security private guards were empowered to call the police if the employees did not leave the Easy Street entrance."
 Also, at SA 31-37, that opinion stated:
 ". . . the first interference with the Union's pickets was by Holland Rantos, the primary object of the picketing. (3) Here, the nearest public property was 967 feet from the primary employer's place of business rather than the 500 feet as in Scott Hudgens. Moreover CJIP excluded the pickets from its private property abutting the east side of Chimney Rock Road even outside the industrial park area proper. (4) The Holland Rantos pickets were forbidden to picket on the east side of Easy Street across the mouth of the private road leading into the industrial park, . . . . (T)he Holland Rantos' pickets could not and did not Effectively communicate with occupants of vehicles (there is no suggestion of pedestrians using Easy Street, but rather vehicles carrying employees and goods) turning into and emerging from Easy Street, all this notwithstanding that in daylight hours the pickets and their picket signs were clearly visible to oncoming vehicles. . . . I . . . conclude that . . . the instant picketing is in a dangerous place.
 "In the first place, it should not be overlooked, in the balancing of interests, that the Act gives the strikers a right to picket and that right is not exercisable only on condition of possibly sacrificing health and body. . . ." (SA 31-32)
 "The strikers, viz-a-viz their own employer, had a right to picket on Easy Street commencing with the night of April 1-2, 1977. It was Holland Rantos' newly-hired guard force which first excluded the pickets from Easy Street.
 "I have concluded . . . that the present picketing restricted to the west side of Chimney Rock Road, especially in view of the difficulty of identifying and reaching those doing business with Holland Rantos, is (1) ineffective and (2) dangerous; that although the Union (3) failed to utilize at least one alternative means (mass media) of reaching the nonstriking ex-members of the Union (the names of the replacements were unknown to the Union), yet the Union (4) was unable in any case to reach important segments of those doing business with Holland Rantos even if it knew the names of four or five major suppliers; and it was irrelevant to reach the general public since the general public was not an important element of the Union's audience notwithstanding that the Union's president testified that the object of the picketing was to reach everybody. In balancing CJIP's private property right to exclude the pickets, I conclude the pickets' statutory right prevails under Board precedent and that picketing at the Holland Rantos property within the industrial park is required under the Act.
 "As I have found that the Holland Rantos employees have a protected right in the circumstances of this case to picket Holland Rantos in front of the Easy Street main entrance to, and in the parking and delivery areas used by and adjoining the Holland Rantos property inside the industrial park, and that both Respondents unlawfully interfered with these employees in the exercise of this right by the conduct described above, I conclude that the Respondents thereby violated Section 8(a)(1) of the Act." (SA 36-37)
 
 
 [6]
 The Regional Director moved on February 21, 1978, to dismiss the appeals at Nos. 77-2058, 77-2059 and 78-1018. An Opposition to this Motion was filed by Holland Rantos and Central Jersey on February 24, 1978. The Motion to Dismiss because of mootness will be denied. See Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974)
 
 
 [7]
 Section 10(j) of the Act (29 U.S.C. § 160(j)) provides:
 "(j) The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States (including the District Court of the United States for the District of Columbia), within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."
 
 
 [8]
 See notes 2 and 5 above. We can find no improper combination of functions of the Board in this record in view of the broad discretion which Congress has in distributing and combining functions in its administrative agencies. See Withrow v. Larkin, 421 U.S. 35, 51-52, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)