**Daniel SILVERMAN, Regional Director of Region 2 of the National Labor Relations Board, and on behalf of the National Labor Relations Board, Petitioner-Appellee,**

**v.**

**40–41 REALTY ASSOCIATES, INC., et al., Respondents-Appellants.**

**No. 223, Docket 81–7461.**

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1981.

Decided Jan. 13, 1982.

Karl Savryn, New York City (Charles L. Mandelstam, Doretta Katzter Goldberg, Dornbush Mensch & Mandelstam, New York City, on the brief), for appellants.

Marjorie H. Watson, Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Harold J. Datz, Assoc. Gen. Counsel, Joseph E. Mayer, Asst. Gen. Counsel, Joseph P. Norelli, Deputy Asst. Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for appellee.

Before TIMBERS and NEWMAN, Circuit Judges, and ZAMPANO,* District Judge.

NEWMAN, Circuit Judge:

This appeal concerns the appropriateness of a District Court's temporary injunction permitting interior picketing within an office building while the National Labor Relations Board considers the lawfulness of such conduct. 40–41 Realty Associates, Inc. ("Landlord"), and Drs. Paul Cohen and Julius Berkowitz, a partnership doing business as Group Health Dental Facility, appeal from an order of the District Court for the Southern District of New York (Constance Baker Motley, Judge) granting the petition of the Regional Director of the National Labor Relations Board for a temporary injunction under section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(j) (1976). For the reasons that follow we conclude that the injunction should not have been issued.

The present controversy arose after unsuccessful attempts to negotiate a new collective bargaining agreement between the Dental Facility and the Amalgamated Dental Union, Local 38–A, SEIU, AFL–CIO,

---

* The Honorable Robert C. Zampano of the United States District Court for the District of Connecticut, sitting by designation.

which represents the Dental Facility's employees. The union went on strike and, initially, established a picket line on the sidewalk outside the twenty-story office building in which the Dental Facility is located. Dissatisfied with its ability to communicate with patients of the Dental Facility from this location, the Union decided to station two pickets in front of the entrance to the Dental Facility suite in the corridor of the second floor. At the request of the Dental Facility, the Landlord threatened to have the pickets arrested if they did not return to their prior location on the sidewalk. The Union then filed with the Regional Director unfair labor practice charges against appellants, alleging that the threatened removal of the pickets from the corridor location violated section 8(a)(1) of the Act. The Regional Director concluded that there was reasonable cause to believe that the employer's attempt to prohibit interior picketing violated the Act and issued a complaint against appellants. Thereafter, at the Union's request, the Regional Director petitioned the District Court for a temporary injunction, which was granted.[1]

When a District Court is presented with a petition for an injunction under section 10(j), the Court's task is two-fold: it must determine whether there is reasonable cause to believe that the Act has been violated, and, if so, whether the requested relief is "just and proper." *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1051 (2d Cir. 1980). We believe that a section 10(j) injunction in this case was not "just and proper" relief for several reasons. Preliminarily, we note that although section 10(j) is an exception to the Norris-LaGuardia Act's limitation upon federal court jurisdiction to issue injunctions in labor disputes, *see* 29 U.S.C. §§ 101, 104–105, 107 (1976), it

in no way changed the extraordinary nature of the injunctive remedy. Nor did it change the basic purpose of the NLRA which envisaged a system in which the

Board would, in the first instance, consider and decide the issues arising under the Act and pending before it, subject to later review by the Courts of Appeals. *McLeod v. General Electric Co.*, 366 F.2d 847, 849 (2d Cir. 1966), *vacated as moot*, 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967) (*per curiam*). Furthermore, in this Circuit general equitable principles apply in deciding the propriety of a temporary injunction issued under section 10(j). *See Danielson v. Joint Board of Coat, Suit & Allied Garment Workers' Union*, 494 F.2d 1230, 1242 (2d Cir. 1974); *McLeod v. General Electric Co.*, *supra*, 366 F.2d at 850. This reluctance to grant injunctive relief is illustrated by the refusal of the Court in *McLeod v. General Electric Co.*, *supra*, to grant an injunction in part because the issue in the case was a difficult one that had not been considered by any court; in *General Electric* we preferred to leave the decision on the alleged unfair labor practice to the Board for resolution, rather than to interfere with the administrative design by granting the injunction. *See McLeod v. General Electric Co.*, *supra*, 366 F.2d at 849–50.

These considerations have special force in a case such as this involving an unprecedented application of the Act. Neither the Board nor any court has ever construed the Act to permit interior picketing in the corridors of an office building. While Regional Counsel calls our attention to three cases upholding the right to picket on private property, each of them involved an area of considerable public coming and going. In *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), picketing occurred inside a large shopping mall. In *Seattle-First National Bank v. NLRB*, 651 F.2d 1272 (9th Cir. 1980), the picketing site was an area outside the entrance to a large restaurant located on the forty-sixth floor of an office building. In *Eisenberg v. Holland Rantos Co.*, 583 F.2d 100 (3d Cir. 1978), the pickets stood on a street inside an industrial park. All of those locations,

1. On July 14, 1981, a panel of this Court stayed the injunction pending appeal. In the interim, an Administrative Law Judge has ruled that the Union is entitled to picket at the entrance to the Dental Facility on the second floor.

while privately owned, had attributes of a public place. Whether or not we might agree with the *Seattle Bank* decision, even that decision arguably involves, and the other two plainly involve, a location that is the functional equivalent of the traditional picketing site—the public sidewalk outside a building's main entrance. In all three cases, the picketing occurred at locations sufficiently observable by large numbers of the public to provide the same inhibition against hostility to customers or other untoward conduct that inheres in a public sidewalk location. By contrast, the Dental Facility is located in an office building corridor that houses only one other office. To consider this the functional equivalent of a sidewalk places an entirely novel and questionable construction upon the Act.

▮▮▮ We recognize that sound administration of the Act requires appropriate deference to the expertise of the Board, *see NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308 (1963); *McLeod v. General Electric Co., supra*, 366 F.2d at 850 ("this Court's decision on the ultimate proposition of law will be better based after the Board has applied its fund of knowledge to the problems involved"), and some degree of deference is warranted when the Regional Director seeks an injunction under sections 10(j) and 10(*l*)[2] pending a Board decision. *See Kaynard v. Mego Corp.*, 633 F.2d 1026, 1032–33 (2d Cir. 1980) (reasonable cause to believe violation occurred); *Danielson v. Joint Board of Coat, Suit & Allied Garment Workers' Union, supra*, 494 F.2d at 1245

(same). Such deference is especially appropriate in section 10(j) cases when the prevailing legal standard is clear and the only dispute concerns the application of that standard to a particular set of facts. *See, e.g., Hendrix v. International Union of Operating Engineers, Local 571*, 592 F.2d 437 (8th Cir. 1979); *Humphrey v. International Longshoremen's Association*, 548 F.2d 494, 498 (4th Cir. 1977).[3]

However, when the Regional Director asks a court to fashion a section 10(j) injunction to permit interior picketing in an office building corridor, he inverts the traditional relationship between administrative agency and court: the court is asked to make the initial ruling as to the propriety of a novel and unprecedented application of the statute, and thereafter the Board will apply its expertise to the issues presented.[4] Of course the nature of the section 10(j) remedy contemplates that a court will rule prior to a decision by the Board, and if the precedents established that interior picketing is protected by the Act, we would accord the usual, though not unlimited, deference to the Regional Director's assessment of the particular facts of this case. But unless and until the Act is authoritatively construed in such fashion, we do not believe that a section 10(j) injunction to permit interior picketing is a "just and proper" remedy, at least in the absence of the most compelling circumstances.

Finally, we note that a section 10(j) injunction, even in a relatively settled area of the law, is appropriate when there have been flagrant violations of the Act or there

2. Section 10(j) gives the Board the power to petition a district court for an injunction once a complaint alleging an unfair labor practice has been issued. Section 10(*l*) requires the Board to petition for an injunction whenever certain unfair labor practices are the subject of the complaint. *See Danielson v. Joint Board of Coat, Suit & Allied Garment Workers' Union*, 494 F.2d 1230, 1241–42 (2d Cir. 1974).

3. In *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047 (2d Cir. 1980), we approved the grant of an interim bargaining order as part of the section 10(j) relief. Although an interim bargaining order is an unusual remedy, it is not an unprecedented one. *See id.* at 1054–55.

4. The ultimate issue on the merits will be a close question. In *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), the Supreme Court stated that the NLRB must seek the proper accommodation between employees' section 7 rights and private property rights; this proper accommodation, which depends on the content of the section 7 rights and the context in which they are asserted, " 'must be obtained with as little destruction of one as is consistent with the maintenance of the other.' " *Id.* at 521, 96 S.Ct. at 1037 (quoting *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956)).

is an overriding need to preserve the status quo. *Seeler v. Trading Port, Inc.*, 517 F.2d 33 (2d Cir. 1975). In the absence of authoritative rulings concerning interior picketing, we cannot say that an employer's attempt to prohibit such conduct is a flagrant violation of the Act, even if such conduct should ultimately be determined to be unlawful. Moreover, while the precise status quo prior to the employer's arrest threat was interior picketing on the second-floor corridor, we think a sufficient use of the District Court's injunctive power would be to ensure that, pending the Board's consideration of the case, picketing may continue, as it existed initially, at the traditional site—the main entrance to the building. Since picketing at that location is not opposed by the employer, no injunction was needed to maintain an adequate opportunity for airing union grievances.

The injunction is vacated.