Robert H. MILLER, Regional Director of Region 20 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

PACIFIC ISLE PACKAGING, INC., Respondent.

Civ. A. No. 87–0907 ACK.

United States District Court, D. Hawaii.

Aug. 30, 1988.

Walter L. Kintz, Alan D. Longman, N.L.R.B., San Francisco, Cal., Thomas W. Cestare, Wanda L. Pate, N.L.R.B., Honolulu, Hawaii, for petitioner.

Torkildson Katz Joseem Fonseca & Moore, Jared Jossem, Richard Rand, Honolulu, Hawaii, for respondent.

## ORDER VACATING PRELIMINARY INJUNCTION

KAY, District Judge.

This matter comes before the court on Petitioner National Labor Relations Board's Motion to Modify Injunction and Respondent Pacific Isle Packaging, Inc.'s Motion to Vacate and Dismiss Action and for Sanctions and Costs. The court, having considered these motions, the memoranda filed by the parties, and the arguments of counsel, finds as follows:

I.

The National Labor Relations Board (Petitioner) filed this action seeking preliminary injunctive relief against Pacific Isle Packaging, Inc. (Respondent) under Section 10(j) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(j). Pursuant to the provisions of Section 10(j), Petitioner may seek from a district court preliminary injunctive relief in order to protect its ability to provide ultimate relief in a proceeding against an employer alleged to have violated the NLRA. The injunction in this case was sought in order to provide interim relief to the Hotel Employees and Restaurant Employees, Local 5, AFL–CIO ("the Union"), which had filed an unfair labor practice charge with the Board on August 11, 1987. The Board had investigated this charge and issued an administrative complaint on September 8, 1987. The complaint alleged that Respondent had violated Sections 8(a)(1), (3), and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1),

(3), and (5) by unlawfully terminating eight employees because of their support for the Union.

An administrative hearing on the complaint was held from October 21 through October 23, 1987. The Board received authorization to seek an injunction under Section 10(j) on October 21, some six weeks after the complaint issued. The Board waited nearly two months until December 11, 1987 to file the present Petition for Preliminary Injunction with this court. Rather than insist upon the expedited hearing that this court had scheduled, the Board then stipulated to a continuation of the hearing.

In the unfair labor practice proceedings, it was only upon the suggestion of counsel for Pacific Isle that the Board asked the ALJ to expedite his processing of that case. This request was not made until December 28, 1987.

There is no satisfactory explanation in the record for the Board's delay in promptly seeking the injunctive relief which it asserted was immediately necessary. The only proffered reasons were (1) there were two other cases in the Board's Honolulu office with a higher priority; and (2) a clerical problem in typing the documents. In contrast, the Board's own internal rules require that a Section 10(j) petition should be filed within 48 hours of authorization. *See,* NLRB Casehandling Manual § 10310.5. (Unfair Labor Practice Proceedings). In this case, the Board apparently gave a higher priority to other matters, and thus ignored this rule and actually filed nearly two months after receiving authorization and four months after the alleged unlawful acts.

Citing the Board's "extensive backlog", the Ninth Circuit has recently held that a four-month delay by the Board in seeking an injunction was not by itself unreasonable, and that the Board needs a "reasonable period of time" to investigate and deliberate before it decides to bring a Section 10(j) action. *Aguayo v. Tomco Carburetor Company,* 853 F.2d 744 (9th Cir.1988). Once the Board reaches the decision that interim relief is necessary, further delay in filing the petition seems to be some indication of the real need for immediate relief.

In order to provide interim relief pending final disposition of the charges, Petitioner sought from this court an order requiring Respondent to (1) "offer immediate reinstatement to the employees who have had their employment terminated," (2) bargain with the Union as the collective bargaining representative of its employees, (3) refrain from further violation of the NLRA, and (4) post copies of the injunction and the court's findings at the workplace.

After a hearing and supplemental briefing, this court, with the approval of the parties, contacted the ALJ in order to determine how soon his recommendation might be issued. The Board had protested that this court should not rely on the representations of the ALJ as to when his recommendation on the merits would be made, and in view of the over six months delay of the ALJ in issuing his recommendation, Board has been proven correct in warning against such misplaced reliance. However, based on the assumption that the ALJ's decision in the underlying case before the Board was imminent, this court filed an interim order on March 11, 1988, postponing its decision on Petitioner's motion for preliminary injunction pending the ALJ's ruling. By order dated April 27, 1988, the Ninth Circuit directed this court to vacate the interim order. Pacific Isle Packaging, Inc. ("Pacific Isle") filed a petition for rehearing, which was denied by order dated June 15, 1988.

On June 30, 1988, this court granted Petitioner's motion, and issued the requested injunction. This court concluded that although the issue of whether an injunction should be granted to reinstate the employees presented a close call, the public interest and the interest of the former employees should not be penalized by the irresponsiveness of the Board in this matter. On balance, the nature of the alleged violations and the Union representative's affidavit were sufficient to show that the public interest required active protection by this court pending the final decision. Under the terms of the injunction, Respondent

was required, inter alia, to offer reinstatement to its former employees and to begin bargaining with the Union within 8 days. Late in the afternoon on the day before Respondent was required to comply with the injunction, Respondent and this court were informed that the Administrative Law Judge ruling on the underlying claim had issued his decision in favor of Respondent. Upon the joint motion of the parties, the injunction was stayed until August 10, 1988.

## II.

By its nature, a preliminary injunction under Section 10(j) is intended to prevent the irreparable damage which may be caused by the passage of time pending an ultimate ruling by the NLRB. Confusingly, the attitude of Petitioner in seeking this relief has not been consistent with the premise that interim relief is intended to prevent injury caused by passage of time. Instead, seemingly without regard to the passage of time, Petitioner delayed seeking interim relief until four months after the charges were filed and nearly two months after authorization was received to seek an injunction under Section 10(j).

It is important to note that Section 10(j) relief, in and of itself, is an extraordinary remedy. *See, e.g., Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1192 (5th Cir.1975). The Second Circuit has described the policy considerations underlying the unusual nature of this relief:

It is black letter law that the issuance of an injunction is an extraordinary remedy indeed. This is especially true in the labor field where Congress by the Norris–LaGuardia Act deprived the federal courts of jurisdiction to issue injunctions in labor disputes. One exception to this almost blanket prohibition was carved out by Congress in section 10(j) of the National Labor Relations Act empowering the Board to seek in the appropriate case a temporary injunction in the district court when a complaint charging an unfair labor practice had been issued and was pending before the Board. This sec-

tion in no way changed the extraordinary nature of the injunctive remedy.

*McLeod v. General Electric Co.*, 366 F.2d 847, 849 (3rd Cir.1966), *vacated as moot*, 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967). *See also Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1091 n. 26 (3rd Cir.1984) (Section 10(j) intended for extraordinary cases where there is unusual likelihood of "ultimate remedial failure").

Therefore, in shaping remedies under Section 10(j), courts have considerable discretion to determine what is appropriate relief under this statute. As explained by the court in *Eisenberg v. Hartz Mountain Corp.*, 519 F.2d 138, 141–42 (3rd Cir.1975), the Board may choose to act under Section 10(j) to further the public interest, "[b]ut, beyond that, Congress had left the court to determine, case by case, what judicial action will be 'in the public interest.'" Indeed, a trial court's discretion includes the power to mold remedies to fit unique circumstances. *Boire, supra*, 515 F.2d at 1193. Thus, a district court's decision about whether relief under Section 10(j) is "just and proper" will be upheld unless there is an abuse of discretion. *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1030, 1033 (2nd Cir.1988). *See also, Solien v. Merchants Home Delivery Service*, 557 F.2d 622 (8 Cir.1977).

Generally, when a preliminary injunction is sought, this court must consider the relative hardships on the parties of the grant or denial of the requested relief in light of the likelihood that ultimate relief will be granted after full consideration of the merits of the case. However, in a Section 10(j) proceeding, the usual consideration of the merits of the claim is replaced by a statutory "reasonable cause to believe" standard, thus altering the balancing that is usually done in ruling on a motion for preliminary relief. The paramount goal is the interest of the public.

■ Ideally, in cases which would turn on credibility determinations, it would seem that the most certain way to fulfill the purpose of Section 10(j) in assuring the effectiveness of the ultimate relief granted by the Board would be to defer ruling on

the petition for injunction until the ALJ issues his recommendation on the merits, and then to issue an injunction in accordance with his recommendation if the court agrees with it. The Board has conceded that the recommendation of the ALJ is relevant and of assistance to the district court judge in deciding whether injunctive relief under Section 10(j) is appropriate (although the burden of proof differs). *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 40 n. 11 (2d Cir.1975) ("on remand, the district court should consider ... also the findings which have since been made by the administrative law judge ... who heard the evidence and observed the demeanor of the witnesses."). If, as in this case, the decision of the ALJ turns on credibility determinations, that decision would most likely be followed by the Board in issuing a final ruling, *Salt River Valley Water User's Association*, 272 NLRB 296 at n. 1 (1984), enforced 769 F.2d 639 (9th Cir.1985) ("[t]he Board's established policy is not to overrule an administrative law judge's credibility resolutions unless the clear preponderance of all the relevant evidence convinces us that they are incorrect.") In the instant case the ALJ stated that his decision would "rest largely on credibility determination...." Tr. at 680. Thus, awaiting that decision could avoid an unnecessary injunction which would be costly and intrusive to the employer and disruptive to both the former employees and the replacements.

However, in the normal case contemplated by the statute, the Board files in a timely manner for injunctive relief immediately after the alleged violations and prior to the hearing before the ALJ. Consequently, there would be a significant lapse of time between the request for the injunction and the issuance of the ALJ's recommendation, during which the effectiveness of the ultimate relief of the Board might be impaired. In cases such as the present one, where there has been a long unexplained delay by the Board in filing for injunctive relief, and the recommendation of the ALJ appears imminent, it would seem that the aforestated ideal resolution in fulfilling the purposes of the statute would be to await the ALJ's ruling and then grant whatever relief is appropriate.

Unfortunately, such a resolution may be unworkable in light of the fact that, as in this case, a decision by the ALJ may not be forthcoming even several months after the hearing. It is regrettable that ALJs are not required to issue their recommendations within a reasonable period of time following their hearings in cases involving Section 10(j) proceedings, such as 30 or 60 days. There is, however, no way under present procedures to be certain that a decision would be rendered quickly enough to avoid further harm to the public interest, and so even under circumstances such as in the instant case the court cannot await the ALJ's recommendation since an indefinite postponement of relief may prevent fulfillment of the NLRA purposes.

The problems inherent in the procedures established by Section 10(j) are well illustrated by the present case. This court was required to rule on the motion for interim relief without the benefit of the ALJ's decision at a time when the ALJ had already been presented with the merits of the claims some months previous. At that time, this court expressed its concern about the equitable unfairness of granting costly and intrusive interim relief when because of Petitioner's delay in seeking relief, a decision on the merits appeared imminent. As it turned out, the scenario which concerned this court at the initial hearing occurred, and the ALJ's decision came out in favor of the employer soon after the injunction was granted. The injunction was inappropriate in light of that decision, and substantial harm to the parties was only narrowly avoided because of the happenstance of Respondent's attorney calling Petitioner late in the afternoon on the day before the injunction was to take effect to inquire about modes of compliance.

### III.

The court and the parties agree that in view of the decision of the ALJ, immediate reinstatement of the former employees and a bargaining order are no longer appropriate. Petitioner asserts, however,

that an injunction is still necessary in order to preserve the Board's ability to protect the public interest and provide ultimate relief in this case. Accordingly, Petitioner requests that the preliminary injunction be modified to only require Respondent to cease and desist from any violation of the NLRA and to place the former employees on a preferential hiring list and recall those employees to fill any vacancies as they occur or additional positions as they become available.

In deciding whether to issue an injunction pursuant to Section 10(j), the district court makes a two part inquiry: (1) is there "reasonable cause to believe" that the alleged violations have occurred; and (2) if so, is the relief requested "just and proper" under the circumstances of the case. *See Fuchs v. Hood Industries, Inc.,* 590 F.2d 395 (1st Cir.1979); *Eisenberg v. Wellington Hall Nursing Home,* 651 F.2d 902, 906–07 (3rd Cir.1981); *Solien v. Merchants Home Delivery Service,* 557 F.2d 622, 626 (8th Cir.1977); *Kaynard v. Mego Corp.,* 633 F.2d 1026, 1030 (2d Cir.1980).

With regard to the finding of "reasonable cause to believe," the Petitioner is held to a minimal standard of proof, *see Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185, 1189 (5th Cir.1975), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976), and in the present case, Petitioner has made a sufficient factual showing to establish that there is "reasonable cause to believe" that a violation has occurred. As Petitioner asserts, the decision by the ALJ does not alter this court's finding that there is reasonable cause to believe that a violation has occurred. Although the ALJ discredited the testimony upon which that finding was based, this court is to resolve disputed factual matters in favor of Petitioner in ruling on the propriety of preliminary relief. *San Francisco–Oakland Newspaper Guild, et al., v. Kennedy,* 412 F.2d 541 (9th Cir.1969).

In deciding whether the relief requested by Petitioner is "just and proper," this court is guided by the principle that Section 10(j) relief is only appropriate to the extent that it is necessary to preserve the status quo between the parties pending the final decision by the Board. *Johansen v. Queen Mary Restaurant Corp.,* 522 F.2d 6, 7 (9th Cir.1975).

Respondent is, of course, already obligated by law to comply with the NLRA, and an injunction requiring such compliance is therefore redundant. Petitioner points out that if ordered to comply with the NLRA, Respondent would be subject to contempt sanctions in addition to the ordinary remedies for such a violation. Petitioner does not, however, establish that this additional threat is necessary to preserve the status quo in this case. Although such a provision was included in the prior injunction issued by this court, such does not appear to substantially promote the likelihood that the Board's ultimate power to provide a remedy will be preserved since there is no allegation that in this case the existing penalties for a violation of the NLRA are inadequate to discourage such. In light of the fact that the only forum to have considered the merits of the case has decided that Respondent did not violate the law, this court is unwilling to assume that Respondent is so prone to a violation that only the prospect of being held in contempt would effectively discourage such actions.

Likewise, both parties recognize that Respondent is already obligated under *Laidlaw Corp. v. N.L.R.B.,* 171 NLRB 1366 (1968), to establish the preferential hiring list that Petitioner seeks to have this court require by injunction. Indeed, Respondent asserts that such a list has been maintained ever since the employees left, and, in fact, one employee has already been reinstated pursuant to this rule. As with the cease and desist order, there is no indication that the threat of contempt sanctions is necessary to ensure Respondent's compliance with the *Laidlaw* decision, and therefore, such a requirement would not substantially promote the ability of the Board to effectuate ultimate relief in this case.

Lastly, Petitioner asserts that the requested injunction will preserve the Board's ability to provide ultimate relief by giving assurances to the employees who are still hoping for reinstatement. This court is unconvinced by this argument.

The employee's hopes for reinstatement were undermined substantially by the decision of the ALJ in this matter, and redundant threats of sanctions for future violation of the law in this context would not appear to bolster those hopes.

## IV.

Respondent has made a request for sanctions pursuant to Fed.R.Civ.P. 11. The grounds asserted as a basis for sanctions do not, however, support such an award. Petitioner's motion for a preliminary injunction was clearly not frivolous, as is indicated by the fact that the injunction was initially granted. Although Petitioner's delay in seeking the injunction undermined their position before this court, that delay does not make this action frivolous. Petitioner has not filed any documents in this matter which appear to be without foundation in fact or law.

## V.

In accordance with the foregoing, it is hereby ORDERED that Petitioner's Motion to Modify Injunction is GRANTED to the extent of vacating the employee reinstatement and bargaining orders. Respondent's Motion to Vacate Preliminary Injunction is GRANTED. Respondent's Motion for Sanctions and Costs Pursuant to Fed.R. Civ.P. 11 is DENIED, and this action is dismissed, the parties to bear their own costs.